Ronald J. NEMMERS and Sarah L. Nemmers, as parents and next friends of Eric P. Nemmers, Plaintiffs–Appellees,

v.

UNITED STATES of America, Defendant–Appellant.

No. 88–1876.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 11, 1989.
Decided March 17, 1989.

Dee V. Benson, Deputy Atty. Gen., Washington, D.C., for defendant-appellant.

Edward R. Durree, Strodel, Kingery & Durree, Assoc., Peoria, Ill., for plaintiffs-appellees.

Before BAUER, Chief Judge, CUDAHY, Circuit Judge, and GRANT, Senior District Judge.[*]

[*] The Honorable Robert A. Grant of the Northern District of Indiana, sitting by designation.

BAUER, Chief Judge.

This is the government's second appeal from an order of the district court awarding the plaintiffs damages under the Federal Tort Claims Act for negligent medical treatment before and during the birth of their son. In the first appeal, this court vacated the judgment and remanded the case to the district court to redetermine, under the correct legal standard, whether this suit was barred by the statute of limitations. *Nemmers v. United States*, 795 F.2d 628 (7th Cir.1986) (*"Nemmers I"*). We also directed the district court that, should it still conclude under the proper standard that this suit was not time-barred, it was required to make additional findings of fact concerning the amount of damages and costs of future care. On remand, the district court once again concluded that this suit was not barred by the limitations period and recalculated the amount of damages. The government appeals that decision only with respect to the question of the statute of limitations. For the following reasons, we affirm.

I

Because the facts of this case have been set forth in two district court opinions, *Nemmers v. United States*, 612 F.Supp. 928 (C.D.Ill.1985), and *Nemmers v. United States*, 681 F.Supp. 567 (C.D.Ill.1988), as well as in *Nemmers I, supra*, we set forth here only those facts that are necessary to resolve this appeal. Eric Nemmers was born in July of 1973, more than three weeks late and after a long and difficult labor that ended in a caesarian section. Eric is mentally retarded and has cerebral palsy, conditions which the district court concluded after a bench trial were the result of negligent medical treatment by Navy doctors both before and during his birth. The Nemmers did not file this suit charging the doctors with negligence until October of 1981, more than eight years after Eric's birth.

The defendants have argued throughout the course of this litigation that the two year statute of limitations applicable to

suits under the Federal Tort Claims Act, 28 U.S.C. § 2401(b), bars the Nemmers' suit. They insist that by May of 1977, the Nemmers had the information necessary to discover that Eric's injury may have been attributable to the negligence of the Navy doctors, knowledge which served to start the limitations period running. That crucial information was supposedly contained in a report which Dr. Steven Copps had written to the Nemmers regarding methods of treatment for Eric. The relevant portion of that report stated:

Eric has evidence that indicates to us that he experienced some mild brain damage prior to his birth. As is often the case, we can't explain to you the exact reason for this occurrence but we do not find evidence in this particular case to suggest any genetic implications.... Such insults that occur before birth can be from any number of reasons, one of which is the possibility of the youngster contracting a viral illness in the mother's uterus prior to birth. From the [medical] history you had a relatively severe influenza-like high fever illness at about the 3rd month of your pregnancy. It is possible that this illness could have affected young Eric in the formative stages of embryological development; the fetal distress experienced during labor merely being a reflection of the pre-existent problem and not because of the trauma of delivery although that might have also contributed to his present condition somewhat. Ordinarily youngsters who have cerebral palsy on the basis of brain damage that occurs just before, at, or just after birth have different expressions at this time which Eric doesn't demonstrate. If they have had lack of oxygen to the brain substance they develop tightness or spasticity of muscles more marked in the lower than the upper extremities. If they have had bleeding into the brain substance, they usually develop spasticity or tightness of muscles on one side of the body. This is not the case in Eric's situation.

The district court initially rejected the government's argument that this report served to provide the Nemmers with the necessary information to start the statute of limitations running. Instead, the court found that the statute did not begin to run until 1981, when the Nemmers read a newspaper article about a child with problems similar to Eric's which had been caused by negligent treatment at the time of delivery. *Nemmers*, 612 F.Supp. at 930–31, 933. On the first appeal of the judgment, the government challenged this finding, arguing that the district court had erroneously applied a subjective standard to determine whether Dr. Copps' report provided the Nemmers with the knowledge that negligent treatment during Eric's birth had caused his problems. We agreed that the district court had erred in applying a subjective analysis, concluding that under *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), the proper test for determining when the statute of limitations began to run on the Nemmers' claim was the objective test of whether, on the basis of Dr. Copps' report, a reasonable person in the Nemmers' position would have known enough to identify negligent treatment before and during delivery as a potential cause of Eric's condition. *Nemmers I*, 795 F.2d at 631. The answer to this question, we concluded, required a factual determination which only the district court could make. *Id.* at 632–33. Thus, we remanded the case to the district court in order to make this factual determination using the proper legal standard.

On remand, the district court reexamined all of the evidence that it had had before it in the first instance (no new evidence was offered or received), keeping in mind our instructions to evaluate that evidence according to the objective standard set out in *Kubrick*. The district court still concluded that, even under the objective test, "Dr. Copps' report would not cause a reasonable person to conclude, or even suspect, that Eric may have been injured as a result of conduct of the Defendant's medical personnel, or that the timing of his mother's Caesarean section had anything to do with his cerebral palsy." *Nemmers*, 681 F.Supp. at 570. The court found that Dr.

Copps' use of the phrases "trauma of birth" or "fetal distress during labor" were at best ambiguous, and were not phrases from which a reasonable person would infer that acts or omissions of government physicians could have been the cause of Eric's brain damage. *Id.* at 571. The court also noted that Dr. Copps' report concluded that Eric's problems were not characteristic of the kinds of problems and limitations normally associated with children who suffer brain damage just before, at or after birth. *Id.* Thus, the court found that "neither the Plaintiffs, nor a reasonable person exercising reasonable care or reasonable diligence, would have learned or inferred from Dr. Copps' letter that Eric's condition had potentially been caused by conduct of the Navy doctors." It is this finding which the government challenges on appeal.

## II

■ The government first argues that the district court erred in holding that this suit was not time-barred because it believes that, as a matter of law, Dr. Copps' report, coupled with the Nemmers' knowledge regarding the circumstances of Mrs. Nemmers' pregnancy and difficult delivery, served to put the Nemmers on notice that the negligence of the Navy doctors was a potential cause of Eric's disabilities. This argument is a tenuous one at best, especially in light of our unequivocal holding in *Nemmers I*. There we stressed that the issue of whether a reasonable person in the Nemmers' position would have, on the basis of Dr. Copps' report, identified negligence of the Navy doctors as a potential cause of Eric's brain damage was a question of fact—the resolution of which, we specifically noted, "is the district court's call." 795 F.2d at 633. That holding became the law of the case which we will not reconsider without a showing that either the evidence considered on remand was substantially different, or controlling authority has since changed, *Barrington Press, Inc. v. Morey*, 816 F.2d 341, 342 n. 2 (7th Cir.1987), or the previous decision was "clearly erroneous, and would work a substantial injustice." *Id.; Soderbeck v. Bur-*

*nett County, Wis.*, 821 F.2d 446, 449–50 (7th Cir.1987). The government does not argue that any of these "exceptional circumstances" exists; thus, we will not reconsider our previous ruling on this point.

■ Alternatively, the government argues that, even if this issue can properly be viewed as a question of fact, the district court's factual finding on this point was clearly erroneous. Under this limited standard of review, we will not second guess a district court's factual finding unless "left with the definite and firm conviction that a mistake has been committed." *E.E.O.C. v. Sears, Roebuck & Co.*, 839 F.2d 302, 309 (7th Cir.1988), quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). As long as the district court's account of the evidence is plausible in light of the record viewed in its entirety, we may not reverse it even though convinced that we would have weighed the evidence differently. *Id.* One of the basic tenets of appellate review of district court fact findings is that "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.*

In *Nemmers I*, this court discussed by way of example two possible inferences that a reasonable person might have drawn from Dr. Copps' report, stating:

A reasonable person might read [Dr. Copps'] report as saying that the medical care near the time of birth (whether the care was exemplary or awful) did not cause Eric's cerebral palsy. Yet a reading of this letter, in conjunction with the Nemmers's knowledge that Mrs. Nemmers did not have a severe influenza during pregnancy and was unattended and unmedicated for almost three days of intermittent labor, might signal a significant chance that medical decisions near the time of birth played a causal role. *Only the district judge may resolve the question whether the report would suggest to a "reasonable person" that the medical care rendered (more*

*accurately, not rendered) in 1973 played a role.*

795 F.2d at 633 (emphasis added). *Nemmers I* made clear that the district court would have to choose between the permissible inferences suggested by Dr. Copps' report and the surrounding circumstances; having done just that, the district court's choice cannot be clearly erroneous.

### III

For all of the reasons stated above, the judgment of the district court is

AFFIRMED.