In re SWINE FLU IMMUNIZATION PRODUCTS LIABILITY LITIGATION.

Linda KENNEDA, Appellant,

v.

UNITED STATES of America.

No. 88–5100.

United States Court of Appeals, District of Columbia Circuit.

Argued March 31, 1989.

Decided Aug. 8, 1989.

---

David W. Johnson, for appellant.

Jeffrey Axelrad, Dept. of Justice, with whom John R. Bolton and Laura D. Millman, Dept. of Justice, Washington, D.C., were on the brief, for appellee.

Before MIKVA, SILBERMAN, and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge D.H. GINSBURG.

D.H. GINSBURG, Circuit Judge:

The district court dismissed plaintiff Linda Sue Kenneda's Federal Tort Claims Act complaint on the ground that she had not filed her administrative claim within two years from the time her cause of action accrued, as required by the Act, 28 U.S.C. § 2401(b). The district court rejected plaintiff's argument that the "discovery rule" operated to preserve her claim, because

"plaintiff was fully aware of serious injury following a Swine Flu inoculation but failed to file a complaint because the precise nature of the injury was not diagnosed by her physicians...."

## I. BACKGROUND

The gist of plaintiff's complaint is that the Government is liable to her, under various warranty and tort theories, because in November 1976, as part of the National Swine Flu Influenza Program, it gave her an inoculation from which she contracted Guillain Barré Syndrome (GBS), a debilitating disease. In her response to the Government's interrogatories, plaintiff recounted that she began to ache and to vomit within a few hours after receiving the inoculation; that some months later (in March 1977), after experiencing headaches and numbness in her hands, she first sought medical treatment; that thereafter other, more debilitating symptoms, such as atrophy of muscle tissue, came on, leading her to consult several different doctors; and that in December 1980 her then current doctor diagnosed her illness as GBS. In her affidavit responding to the Government's motion to dismiss, plaintiff further stated: that "at all times wherein I experienced the aforementioned problems I consulted with my physicians, and asked my physicians what had caused my problems, [but] ... despite my inquiries, my various physicians informed me that they did not know what the cause of my problems was"; and that "it was not until on or after January 25, 1985 that any physician responded to my inquiries by suggesting or indicating to me that my problems were the result of the swine flu inoculation."

On Friday, January 23, 1987, plaintiff sent her administrative claim to the appropriate Government office via overnight courier service. On Monday, January 26, that office was closed due to a snowstorm; the Government therefore did not receive plaintiff's claim until Tuesday, January 27, two years and one work day after she learned that her injury might be traceable to the swine flu shot she had received. On February 12, 1987, the Government denied plaintiff's claim on the grounds that it failed to demonstrate the requisite elements of causation and negligence and that it was filed more than two years after it accrued.

## II. ANALYSIS

The Government concedes that the statute of limitations did not begin to run on plaintiff's claim until she had learned of both her injury and its cause, and it does not challenge her representation that she had no knowledge of that cause until January 25, 1985. Therefore, we cannot uphold the district court on the basis stated in its order, which addresses only plaintiff's knowledge of her injury; if plaintiff lacked actual and constructive knowledge of the *cause* of her injury, then her being merely "aware of [*having* a] serious injury," as recited by the district court, would not defeat her argument that the statute of limitations was tolled by her reasonable failure to discover the cause of the injury.

The Government asks us to uphold the district court on the ground that, even if plaintiff did not know the cause of her injury before January 25, 1985, she should have known it, *i.e.*, a reasonably diligent person would have known it. In the alternative, the Government contends that we should affirm because it did not receive plaintiff's administrative claim until January 27, 1987, more than two years after she admittedly knew of her cause of action.

### A. *Preliminary Issues*

We address these arguments below, after resolving two preliminary issues going, respectively, to the basis for the district court's order and to the appropriate standard for assessing it.

1. *The "Jurisdictional" Nature of § 2401.* It is unclear whether the district court viewed the two-year time limitation of § 2401 as a jurisdictional bar. The Government, in its motion for dismissal, clearly did, for it sought dismissal pursuant to Fed.R.Civ.P. 12(b)(1) ("lack of jurisdiction over the subject matter"). In granting the motion, the court cited Rule 12(b), but stated in its order that the dismissal was

"with prejudice"—a disposition usually reserved for a ruling on the merits. *See* Fed.R.Civ.P. 41(b) ("Unless the court in its order for dismissal otherwise specifies, a dismissal ..., other than a dismissal for lack of jurisdiction, ... operates as an adjudication upon the merits."); *Costello v. United States*, 365 U.S. 265, 285–86, 81 S.Ct. 534, 544–45, 5 L.Ed.2d 551 (1961); C. Wright & A. Miller, *Federal Practice and Procedure* § 2373 at 237 (1971 & 1988 Supp.) ("dismissals that do not reach the merits as for want of jurisdiction ... must be without prejudice").

The *legal* premise underlying the court's order may be that, when a plaintiff challenging an agency denial of her FTCA claim is held not to have satisfied the filing requirement of § 2401, that holding is "jurisdictional" only in the sense that it prevents the court from reaching the merits of the complaint, and not in the sense that it would be no bar to that plaintiff bringing a later case based upon the same agency action. *Cf. Sexton v. United States*, 832 F.2d 629, 630, 637 (D.C.Cir.1987) (dismissal for untimeliness under § 2401 treated *sub silentio* as a ruling on the merits). In this case, however, we are called upon to examine the *factual* premise for the district court's apparent ruling that it lacked jurisdiction, *viz.*, that plaintiff's claim was untimely filed. Because, as discussed below, we find that premise defective, we need not speculate further about the district court's legal theory. Since both parties have treated the § 2401 limitation as "jurisdictional," we too will use that term, but we need not pass upon either the aptness of the label or whether the district court's judgment, if undisturbed, would have precluded a subsequent claim based upon the same facts.

◼ 2. *Standard for Dismissal.* There is a question as to the appropriate standard for the grant of a Rule 12(b)(1) motion. Unlike Rule 12(b)(6) ("failure to state a claim upon which relief can be granted"), which looks to the merits of a claim, Rule 12(b)(1) does not expressly authorize the court to rely upon matters outside the pleadings and concomitantly to treat a motion thereunder as a request for summary judgment under Rule 56, even though a similar need to look to matters outside the pleadings may arise. (In this case, for example, the district court apparently relied upon both plaintiff's medical records, which the Government submitted in support of its motion, and her responses to the Government's interrogatories, in an effort to determine whether it had "jurisdiction.")

This difference between Rules 12(b)(1) and 12(b)(6) raises an issue, novel in this Circuit, with respect to the standard for dismissal under Rule 12(b)(1). The standard is quite strict under Rule 12(b)(6), where the court limits itself to the pleadings; a defendant must show "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1955). Under Rule 56, on the other hand, the burden on the movant (which would here, by imputation, be the Government) is not as heavy: a defendant need show only that no reasonable factfinder could, based upon the materials submitted by both sides, find for the plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). The lesser burden in the latter case makes sense because the party opposing summary judgment, unlike the opponent of dismissal per Rule 12(b)(1) (here, by imputation, Ms. Kenneda) has an opportunity to submit extra-pleading materials in support of her allegations; there is no need for the proponent of summary judgment to anticipate and to negate every possibility ("no set of facts") because the only relevant facts have been identified.

We agree with the Second Circuit, *see Exchange National Bank v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir.1976) (Friendly, J.), that where a judgment is entered pursuant to Rule 12(b)(1) and, like a summary judgment, is based in part upon matters outside the pleadings, the proper approach is to look to the standard of Rule 56, rather than to the stricter standard of Rule 12(b)(6), for guidance. *Cf. Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir.1981) (suggesting that court of appeals

would apply "clearly erroneous" standard to district court's resolution of factual issues raised in a 12(b)(1) motion). Thus, we shall assess plaintiff's complaint and her submissions in response to the Government's motion by asking whether she showed that a reasonable factfinder could rule in her favor on her discovery rule argument.

## B. *The Discovery Rule*

In *Sexton*, 832 F.2d at 637, we held that a plaintiff has a duty to inquire into the unknown cause of a known injury. Accordingly, we reject plaintiff's argument to the contrary, and proceed on the basis of plaintiff's statements, with which the Government does not take issue, that she did repeatedly inquire of her treating physicians as to the cause of her ailment, and that until 1985 none of them could provide an answer. Because there is no evidence in the record to suggest that plaintiff did not conduct her inquiry in a reasonable manner, we hold that her submission is sufficient for a reasonable factfinder to conclude that she satisfied her duty to inquire.

The Government resists with two arguments: First, plaintiff should have suspected a link between the inoculation and her illness, since she experienced some symptoms within a few hours. The early onset of symptoms is not sufficient to hold plaintiff's claim time-barred as a matter of law, however. The record indicates that the relatively mild symptoms experienced by plaintiff shortly after inoculation—vomiting and body aches—went away, and that the more serious but sporadic and varied symptoms that plagued her (and befuddled her doctors) in the years that followed were of quite a different nature. *Cf. Brazzell v. United States*, 788 F.2d 1352, 1356 & n. 2 (8th Cir.1986) (quick onset of GBS symptoms, combined with conflicting diagnoses, insufficient to overcome discovery rule). A reasonable factfinder could therefore conclude, based upon plaintiff's medical records, that she was reasonable in failing to make the connection between her mild early reactions to the inoculation and the different, and more serious, symptoms

that manifested later and that ultimately led her doctor in 1980 to diagnose her disease as GBS.

Second, the Government argues with regard to plaintiff's later symptoms that a reasonable plaintiff would have inquired specifically whether her previous swine flu inoculation might be the cause. In support of this contention, the Government points out that the connection between the swine flu vaccination and GBS was widely known both within and without the medical profession beginning in approximately 1979; indeed, the possibility of such a connection brought about the highly publicized suspension of the Government's vaccination program shortly after plaintiff was inoculated. Due to the broad public awareness of the dangers surrounding this type of vaccination, goes this reasoning, it was not enough for plaintiff merely to have inquired as to the cause of her injury; she should also have advanced the inoculation to her physicians as a proposed cause.

We agree with the premise of the Government's second point, *viz.*, that public awareness of the connection between the swine flu inoculation and GBS might have been so widespread that plaintiff would have had a duty both to inform her doctor that she was vaccinated in 1976 and to inquire whether the vaccination might have caused her disease. *Cf. In re Swine Flu Products Liability Litigation*, 764 F.2d 637, 640–41 (9th Cir.1985) (government's showing of public awareness of connection between GBS and swine flu inoculation insufficient to put plaintiff on inquiry notice as to causation). The difficulty here is that the Government has provided no evidentiary support for its claim of public awareness. In *Swine Flu, supra*, the Government at least submitted evidence, although unavailing in the event, of broad public awareness of the causal link between GBS and the swine flu vaccination. In the present case—perhaps because its evidence was once found insufficient—the Government put nothing at all into the record on this point to support its motion to dismiss.

Nonetheless, on this appeal, the Government urges us to consult the district

court's pretrial order in the multi-district proceedings, *see In re Swine Flu Immunization Products Liability Litigation*, MDL Docket 330, Misc. No. 78–0040, Final Pretrial Order (Nov. 15, 1979) at 3, as to which this is a "tag along" case. The Government argues that that order, filed before plaintiff's action was joined in the consolidated proceeding, binds plaintiff to certain stipulations of fact, to wit: "On December 14, 1976, the [Center for Disease Control] released a press release on [GBS] that 54 cases in 10 states had thus far been reported, and of these 54, 30 had received the inoculation anywhere from one to 30 days before the onset of the syndrome," and that "The [Government's] decision to stop the [inoculation] program in December of 1976 was based on the finding of [GBS] associated with the swine flu vaccination." *Id.* at 18–19.

Assuming *arguendo* that these stipulated facts bind plaintiff (which she disputes), we nonetheless reject the Government's position. At best, the stipulations establish that the Government knew of a possible connection between GBS and the swine flu vaccination, and that a press release suggesting such a connection probably reached at least some portion of the public. This simply does not answer the question whether public knowledge of the possible link was so widespread that plaintiff should have known of, or at least inquired specifically of her doctors about, the possibility that her 1976 inoculation caused her ailment.

In order to affirm the district court, therefore, we would have to accept, as a matter of law, the Government's claim that all the world knew of the connection between the swine flu vaccination and GBS. In addition, we would have to hold that plaintiff in particular was on notice of that connection, notwithstanding her unsuccessful inquiries as to the likely cause of her ailment. This we cannot do on the record before us.

### C. *Sundays and Snow Days*

■ We are also unpersuaded by the Government's alternative theory for dismissal, based upon its late receipt of plaintiff's filing. As an initial matter, we reject plaintiff's argument that, because the Government did not raise this theory in the district court, it is not properly before us. On the contrary, it is settled law that an appellate court can affirm a district court judgment on the basis of "any grounds which ... support [it]." *See Dayton Board of Education v. Brinkman*, 433 U.S. 406, 419, 97 S.Ct. 2766, 2774, 53 L.Ed.2d 851 (1977). We therefore consider the Government's alternative theory, but we conclude that it does not carry the day.

Rule 6(a) of the Federal Rules of Civil Procedure states:

> In computing any period of time prescribed or allowed ... by any applicable statute, ... [t]he last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the office inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days.

In *United Mine Workers v. Dole*, 870 F.2d 662, 665 (D.C.Cir.1989), we recently reaffirmed our "long-established rule, based in the common-law, that statutory time periods are to be construed so as to exclude Sundays." Specifically, we held that Rule 26(a) of the Federal Rules of Appellate Procedure—which, like Rule 6(a), excludes Saturdays, Sundays, and holidays when they fall at the end of the relevant period—governs the computation of a statutory time period for filing petitions for review of agency action. We looked to the Supreme Court's reasoning in *Union National Bank v. Lamb*, 337 U.S. 38, 40–41, 69 S.Ct. 911, 912–13, 93 L.Ed. 1190 (1949), "that the federal rules of procedure can be relied on for interpreting a statutory time period in the absence of any more statute-specific provisions or indication that Congress did not intend the rules to apply...." *UMW*, 870 F.2d at 665 n. 2. As for the argument that the statutory time period in *UMW* was "jurisdictional," we explained:

Statutory provisions laying down time periods for taking appeals, like any other enactments, must be interpreted and applied by courts; in so doing, we use the federal rules as guides. Surely, "the jurisdiction of the federal courts to construe the [jurisdictional provisions of a] statute cannot be a matter of serious dispute."

*Id.* at 6 (citation omitted). Accordingly, we dismissed as "frivolous" the Government's argument that a petition for review filed on the Monday after the Sunday upon which the statutory period would otherwise have expired was untimely. *Id.*

Of course, the present dispute concerns the timeliness of a filing with an agency, whereas *UMW* involved the timeliness of a petition filed with this court in order to review an agency action. The rationale of *UMW* is equally applicable here, however. In both cases, the issue is the jurisdiction of the reviewing court. Just as the court consults Appellate Rule 26(a) as a guide to interpreting a "jurisdictional" statute establishing the time for filing a petition for review, so it consults Civil Rule 6(a) as a guide to interpreting the "jurisdictional" statute establishing the time for filing with the agency. In the absence of any contrary provision in the FTCA, the best evidence of congressional intent is the provision in Rule 6(a) that excludes Sundays from the court's calculation of the last day of the filing period provided by "any applicable statute."

The same logic applies in the case of snow days. Although Rule 6(a) by its terms excludes such days only "when the act to be done is the filing of a paper in court" and "the office of the clerk of the district court" is inaccessible due to inclement weather, the Rule is nonetheless a good guide for interpreting the time limitation in § 2401. We discern no reason applicable to § 2401 but not to Rule 6(a) for counting snow days in determining the last proper date for a filing. If anything, the case for exclusion of snow days is stronger than that for Sundays; since the latter are known in advance, a plaintiff could always accommodate a contrary rule by filing on the previous Friday. That is not possible with respect to snow days, and, given the rule that Sundays are not counted, we find it inconceivable that Congress would have wished to bar plaintiffs who fail to anticipate on Friday that the Government will decide to close a filing office the following Monday due to a snowstorm.

*Hardin v. City Title & Escrow Co.*, 797 F.2d 1037 (D.C.Cir.1986), does not, as the Government contends, compel a contrary result. There we held that a similar time limitation in the Real Estate Settlement Procedures Act, 12 U.S.C. § 2614, was "jurisdictional," and that, as such, it could not be extended, under the doctrine of equitable tolling, on account of fraud. 797 F.2d at 1040–41. Here, the question is not whether a claim admittedly filed outside the statutory period may nonetheless be timely where the delay was due to defendant's fraud; it is the antecedent question of when the statutory period, by its terms, ends. On that question, *UMW*, not *Hardin*, controls.

Because plaintiff filed her claim on the first day that the filing office was open after the lapse of the statutory period on a Sunday, we reject the Government's argument that plaintiff's claim was untimely.

### III. CONCLUSION

For the foregoing reasons, the judgment of the district court is reversed and the case is remanded for further proceedings.

*So ordered.*