**Zachary Cody SIEDSCHLAG, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. C–3–00–09.

United States District Court, S.D. Ohio, Western Division.

March 12, 2001.

H. Vincent Walsh, Hamilton, OH, for plaintiff.

Pamela M. Stanek, U.S. Attorney's Office, Dayton, OH, for defendant.

DECISION AND ENTRY OVERRUL-
ING MOTION OF THE UNITED
STATES TO DISMISS (DOC. # 5);
CONFERENCE CALL SET TO ES-
TABLISH DATE FOR EVIDEN-
TIARY HEARING AND NEW TRI-
AL DATE AND OTHER DATES

RICE, Chief Judge.

This litigation arises out of the alleged medical malpractice of Dr. Pablo Pizarro–Rosario, an employee of Defendant United States, during the birth of Plaintiff Zachary Siedschlag ("Zachary"). Zachary was born on March 16, 1995, at the U.S. Naval Hospital in Puerto Rico.[1] His mother, Cassondra L. Bartley (now Cassondra Ilic),[2] had a difficult delivery with numerous complications. In his Complaint, Plaintiff alleges that the attending physician, Dr. Pizarro–Rosario, jerked or yanked his head, during the extraction of his shoulder.

---

1. The following undisputed facts are taken from Plaintiff's Complaint and the evidence submitted in support of, or in opposition, to Defendant's Motion to Dismiss.

2. The evidence submitted by the parties refers to Zachary's mother by a variety of surnames, to wit: Bartley, Capriani, and Ilic. For the sake of simplicity, the Court will refer to her as Cassandra Ilic.

As a result, he suffers from Erb's Palsy, or flaccid paralysis of his right shoulder, arm and hand. Zachary's mother was made aware of this diagnosis by hospital personnel prior to her son's discharge from the hospital. There is no indication that she was told of the cause of her son's condition. She states, however, that she was repeatedly told that the Erb's Palsy was a temporary problem, and that it would go away. During a consultation with Dr. Robert Lerer on April 23,1997, Ms. Ilic learned that the injuries to Zachary's right arm were likely to be permanent. On September 2, 1997, Zachary, through his mother, filed an administrative claim with the United States, alleging medical malpractice.

Pending before the Court is the Government's Motion to Dismiss, pursuant to Fed.R.Civ.P. 12(b)(1) (Doc. # 5), based upon the Plaintiff's failure to satisfy the applicable statute of limitations. For the reasons assigned, the Motion is OVERRULED.

## I. *Standard for Rule 12(b)(1) Motion*

With a motion to dismiss pursuant to Rule 12(b)(1), the moving party is challenging the court's subject matter jurisdiction. The plaintiff bears the burden of establishing, by a preponderance of the evidence, the existence of federal subject matter jurisdiction. *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir.1986). When the party asserting federal jurisdiction finds its allegations challenged, it must submit evidence substantiating its claims. *Amen v. City of Dearborn*, 532 F.2d 554, 560 (6th Cir.1976). The district court has "wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990) (citations

omitted). The court may consider such evidence without turning the motion into one for summary judgment. *Id.*

## II. *Analysis*

The FTCA statute of limitations requires tort claims against the United States to be presented to the appropriate federal agency "within two years after such claim accrues." 28 U.S.C. § 2401. In a medical malpractice case brought pursuant to the FTCA, the accrual of the cause of action occurs when the plaintiff has discovered both his injury and its cause. *Dawkins v. United States*, 2000 WL 302851 (6th Cir. Mar.16, 2000); *United States v. Kubrick*, 444 U.S. 111, 120, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). The causation prong requires knowledge of more than just the medical cause of the injury, *i.e.*, more than the knowledge that Zachary's arm problems were due to damage to the brachial plexus nerves. Rather, the plaintiff must be aware of who inflicted the injury. *See Kubrick*, 444 U.S. at 122, 100 S.Ct. 352 (for cause of action to accrue, plaintiff need only know "the critical facts that he has been hurt and who has inflicted the injury."). Specifically, the claim does not accrue until the plaintiff knows or should know that his injury is connected to some act of those who treated him, *i.e.*, the actions of Ms. Ilic's physician during the birthing process. *Price v. United States*, 775 F.2d 1491, 1493–94 (11th Cir.1985); *Diaz v. United States*, 165 F.3d 1337, 1340 (11th Cir.1999); *Kerstetter v. United States*, 57 F.3d 362 (4th Cir.1995); *Nemmers v. United States*, 681 F.Supp. 567 (C.D.Ill.1988), *aff'd*, 870 F.2d 426 (7th Cir.1989)(neither the plaintiffs nor a reasonable person exercising reasonable diligence would have learned from a doctor's letter that the plaintiff's retardation and cerebral palsy had been potentially caused by the conduct of government doctors). Once the plaintiff knows or should know

that his injury was caused by the actions of a government physician, the statute of limitations is triggered, regardless of whether he is aware of the precise conduct that resulted in the injury. Moreover, accrual of the cause of action is not postponed until the plaintiff knows "that his injury was negligently inflicted."[3] *Kubrick*, 444 U.S. at 123, 100 S.Ct. 352. Knowledge of the causative factor is critical; whether the plaintiff knows that the cause is such as to constitute a tort under the applicable law is immaterial. Thus, there is no reason to delay the accrual of a cause of action in a medical malpractice suit beyond the point at which a reasonable person's suspicions of an injury and its cause would induce him to seek professional advice about legal recourse. *Id.; Dawkins, supra.*

▮ In its Motion, the government asserts that Plaintiff's mother became aware of his injury shortly after his birth and, therefore, the statute of limitations began to run at that time. Plaintiff contends that the statute of limitations did *not* begin to

run at the time of his birth. Rather, he argues that he did not become aware that he had, in fact, been injured, until April of 1997,[4] at which time his mother learned from his pediatrician, Dr. Robert Lerer, that his Erb's Palsy may be permanent, and that he would not recover. Plaintiff's mother states that, at the time of Zachary's birth, she was repeatedly told by hospital physicians that she should not worry, that his condition would go away, and that her child would get better. Thus, he asserts, the statute of limitations did not begin to run until she consulted with Dr. Lerer. In addition, Plaintiff asserts that she was not informed that his injury was caused by Dr. Pizarro–Rosario's possible negligence until he was seen by Dr. Lerer.

Although the parties have focused only on the first requirement to trigger the statute of limitations, namely that the plaintiff has or should have discovered his injury, the Court concludes that the Government has failed to demonstrate that the second requirement (discovery of the cause) has been satisfied. At the time of Zachary's birth, his mother was aware that

**3.** Although, as set forth *infra,* the Court need not discuss Plaintiff's argument regarding when he discovered or should have discovered his injury, the Court notes that his argument that he was not aware that the physician's conduct was negligent until April of 1997 is completely irrelevant. Plaintiff's mother states in her affidavit that she was not informed that the injury to her son was the result of medical malpractice until she met with Dr. Lerer on April 23, 1997 (Ilic Aff). Dr. Lerer confirms in his affidavit that he explained to Ms. Ilic that Zachary's condition "was potentially due to medical malpractice occurring at the time of the birth of the child." (Lerer Aff. ¶ 3). However, the fact that Plaintiff's mother was not informed until her meeting with Dr. Lerer that Zachary's injury may have been caused by medical malpractice at the time of his birth is irrelevant. As stated above, in *United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), the Supreme Court explicitly rejected the contention that a cause of action in a

medical malpractice case against the government does not accrue until the plaintiff is aware that the injury has been caused by negligence. 444 U.S. at 118–122, 100 S.Ct. 352. Thus, the fact that Plaintiff was not aware, until his mother was informed by Dr. Lerer on April 23, 1997, that his Erb's Palsy was potentially the result of negligence does *not* delay the date upon which his cause of action accrued. Rather, the focus must be on the date upon which Plaintiff knew or should have known of his injury and its cause, *i.e.,* the actions of the doctor (whether negligent or not) at the time of delivery.

**4.** In his memorandum, Plaintiff states that his mother did not become aware of his injury until June, 1997, which he states is the time that she consulted with Dr. Lerer (Doc. # 12 at 3). Because Plaintiff's evidence indicates that she consulted with Dr. Lerer on April 23, 1997, the Court will assume that the June date is a typographical error.

she had a difficult delivery. (Doc. # 5, Ex. 1C)("Patient was able to share information regarding delivery process/complications with newborn, etc."); (Doc. # 5, Ex. 5)("[Mom] worried about how the trauma during delivery will affect Zachary later in life."). Furthermore, the Government's exhibits clearly demonstrate (and Plaintiff has not disputed) that she was aware that Zachary demonstrated weakness in his right arm shortly after birth, and that she was informed that Zachary had been diagnosed with Erb's Palsy. However, the medical records from March of 1995 (Doc. # 5, Exs.1–4) do not indicate that Ms. Ilic was aware or should have been aware that the Erb's Palsy was caused by any conduct taken by her physician during Zachary's birth. Although Dr. Lerer's correspondence indicates that Plaintiff was aware, sometime prior to September of 1997, that the delivering physician yanked Zachary's head during the birthing process (see Doc. # 5, Ex. 1A), his letter does not indicate when Ms. Ilic *first* became aware that conduct by Dr. Pizarro–Rosario during delivery might have caused the Erb's Palsy, *i.e.*, whether that awareness occurred more than two years prior to the filing of the administrative claim.[5]

The Government's additional evidence with regard to causation consists of an Authorization for Release of Personnel and Medical Information Files, signed by Cassandra Bartley on July 15, 1995 (Doc. # 5, Ex. 7), and a request for medical records, sent by Plaintiff's attorney, Mr. Jack Landskroner, dated October 26, 1995 (Doc. # 9, Ex. 10). The Authorization does not indicate that Plaintiff had, at that time, obtained any information regarding what had caused Zachary's condition. The cor-respondence from Mr. Landskroner was written in October of 1995, less than two years before Plaintiff, through his mother, filed an FTCA claim with the United States. Thus, even assuming that Mr. Lanskroner received a prompt reply from the Government, providing him with all of the medical records associated with Zachary's birth,[6] those documents would not have made Plaintiff aware of the possible cause of his injury until after October of 1995. *See Gillean v. United States,* 1991 WL 53240 (6th Cir. Apr.10, 1991)(statute of limitations ran, at the latest, at the time that the plaintiff received medical records). In summary, the Court has no evidence from which to conclude that Plaintiff and his mother were aware of the cause of Zachary's injury prior to the receipt of medical records from the Government. Even if they had received those records in October of 1995, Plaintiff's FTCA administrative claim, filed on September 2, 1997 (Doc. # 5, Ex. 1A) would be timely.

Given that the Government has not demonstrated, as a matter of law, that Plaintiff's claim is untimely, Defendant's Motion to Dismiss (Doc. # 5) is OVERRULED.

Because the issue of this Court's subject matter jurisdiction remains unresolved, this Court concludes that an evidentiary hearing is necessary to determine when Plaintiff became (or should have become) aware of both his injury and its cause. Accordingly, counsel will take note that a conference call will be held on Wednesday, March 28, 2001, at 8:20 a.m., to set a date for an evidentiary hearing on these issues and, in addition, to set a new trial date and

---

5. Dr. Lerer's correspondence states that Ms. Ilic gave him a copy of a videotape of Zachary's delivery to view. There is no indication in his letter, or any of the other exhibits, as to who made that videotape and when Ms. Ilic became aware of it.

6. The handwritten note on the bottom of the document suggests that the Government did not reply prior to December, 1995.

other dates leading to a resolution of this litigation, on an "as needed" basis.