Regina Ann LEWIS, et al., Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. CIV.A.00–1705 LFO.

United States District Court, District of Columbia.

July 24, 2003.

Patrick Allen Malone, Stein, Mitchell & Mezines, Richard T. Brown, Washington, DC, for Plaintiffs.

Claes H. Lewenhaupt, U.S. Department of Justice, Washington, DC, for Defendant.

## MEMORANDUM

OBERDORFER, District Judge.

Plaintiff Regina Lewis, formerly a sergeant in the United States Army, filed a medical malpractice claim, pursuant to the Federal Tort Claims Act, against defendant Walter Reed Army Medical Center, on behalf of herself and her infant son, Clayton Jamal Lewis. Plaintiff alleges that Walter Reed medical staff's negligence during Clayton's delivery resulted in his brain damage and quadriplegia. Presently before the Court is Plaintiffs motion for reconsideration of the dismissal of Clayton Lewis' claims. For the reasons discussed below, that motion is granted.

### I.

#### A. *Factual Background*

On October 13, 1993, Regina Lewis was in her thirty-seventh month of pregnancy and she attended a prenatal appointment at Walter Reed. During that appointment, doctors diagnosed her as suffering from pre-eclampsia[1] and admitted her to the hospital for immediate delivery. Doctors administered Pitocin to induce labor. Plaintiff alleges that doctors allowed the labor to continue for over 24 hours despite indications that the fetus was in distress. Eventually, doctors performed a cesarean section and Clayton Lewis was born on October 14, 1993.

During the attempted delivery Clayton suffered a brain hemorrhage that resulted in quadriplegia and cerebral palsy. Plaintiff states that despite attempts to discover the cause of Clayton's injury, doctors told her that the cause of the hemorrhage and resulting brain damage was "unknown." March 4, 2003 Lewis Dep. at 42–43. She was told "that we may never know what happened." *Id.* Regina now believes that it was the prolonged labor and failure to properly monitor the fetus during the delivery that caused Clayton's injury.

#### B. *Procedural History*

Regina Lewis filed a complaint seeking compensatory and punitive damages on behalf of Clayton and for damages for herself based on the lifetime cost of caring for Clayton. On November 28, 2001, this Court granted the government's motion to dismiss Clayton's claims after concluding that they fell outside of the two year statute of limitations period set forth in the FTCA.[2] This court concluded that "the plaintiffs were aware of both Clayton's injury and at least its general cause [a brain hemorrhage]. Armed with these facts, they could have sought advice that would have enabled them to evaluate the government's acts and omissions." Nov. 28, 2001 Opinion at 4.

On December 31, 2002, Plaintiff moved to vacate the November 28, 2001 dismissal under Federal Rule 60(b)(6). Following oral argument, on April 15, 2003, that motion was denied on the grounds that it was not filed within a reasonable time after the initial dismissal.

Plaintiff now moves for reconsideration of the April 15 order on the basis that she incorrectly relied on Federal Rule of Civil Procedure 60(b)(6), which deals only with final orders and judgments, and that she

---

1. Preeclampsia (also called toxemia) is a pregnancy-induced condition that includes hypertension (high blood pressure).

2. Regina's claims for her own personal injuries were also dismissed under *Feres v. U.S.,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). She does not ask for reconsideration of the dismissal of that claim. She also does not contest the government's January 13, 2003 motion to dismiss her claim for loss of services and companionship.

should have asked for reconsideration under Federal Rule of Civil Procedure 54(b).[3]

## II.

The parties agree that Rule 54(b) is the correct rule under which to move for reconsideration in this case. Rule 60(b)(6) applies only to final judgements or orders, while Rule 54(b) applies to interlocutory orders that adjudicate fewer than all the claims in a given case. Fed.R.Civ.P. 54(b). Unlike Rule 60(b) which contains a reasonableness provision, Rule 54(b) allows a court to reconsider its interlocutory decisions "at any time" prior to a final judgment. *Id.; Citibank, N.A. v. F.D.I.C.*, 857 F.Supp. 976, 981 (D.D.C.1994). "Motions to reconsider interlocutory orders—in contrast to motions for reconsideration of final judgments—are within the discretion of the trial court . . . ." *United Mine Workers v. Pittston Co.*, 793 F.Supp. 339, 344–45 (D.D.C.1992), *aff'd*, 984 F.2d 469 (D.C.Cir. 1993). After careful review of the merits of Plaintiff's motion, the Court vacates its previous order of dismissal of Clayton's claims.

*Statute of Limitations*

The statute of limitations for medical malpractice claims brought under the Federal Tort Claims Act begins to run "by the time a plaintiff has discovered both his injury and its cause, even though he is unaware that the harm was negligently inflicted." *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259

(1979). Plaintiff argues that in determining that the statute of limitations ran on Clayton's claims, this Court previously applied an overly broad definition of the term "cause." Plaintiff argues that because doctors told her that the medical cause of Clayton's injuries was "unknown" she could not be aware of both the injury and its cause.

Plaintiff relies in large part on the United States Supreme Court case *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). In *Kubrick*, the plaintiff suffered bilateral nerve deafness after a physician at the Veteran Administration hospital used neomycin, an antibiotic, to clear an infection to his right thigh bone. 444 U.S. at 113–14, 100 S.Ct. 352. Approximately six months after the hearing loss, in January 1969, a doctor informed Kubrick that it was very likely that neomycin treatment caused the injury. *Id.* at 114, 100 S.Ct. 352. Kubrick then waited more than two years to file a claim against the hospital for negligence. The Court held that once Kubrick was aware of his injury and its probable cause, the neomycin, the FTCA statute of limitations began to run. The statute was not tolled until Kubrick became aware that the harm from the treatment was negligently inflicted. *Id.* at 118, 100 S.Ct. 352. The Court explained:

> We are unconvinced that for statute of limitations purposes a plaintiff's ignorance of his legal rights and his ignorance of the fact of his injury or its

---

**3.** Rule 54(b) states: "When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim . . . the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims . . . shall not terminate the action as to any of the claims or parties, and the order or other form of *decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.*" (emphasis added).

cause should receive identical treatment. That he has been injured in fact may be unknown or unknowable until the injury manifests itself; and the facts about causation may be in the control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain. The prospect is not so bleak for a plaintiff *in possession of the critical facts that he has been hurt and who has inflicted the injury.*

*Kubrick,* at 122, 100 S.Ct. 352 (emphasis added); *see also Chamness v. United States,* 835 F.2d 1350, 1352 (11th Cir.1988) (quoting *Price v. United States,* 775 F.2d 1491, 1493 (11th Cir.1985)) (explaining that statute of limitations begins to run "once the plaintiff discovers that her injury is probably attributable to some act of those who treated her . . . .") (emphasis added); *Kerstetter v. United States,* 57 F.3d 362, 365 (4th Cir.1995) (noting that a plaintiff "does not know the cause of her injury within the meaning of § 2401(b) and *Kubrick* when physicians' mistaken diagnoses about (or utter inability to diagnose) the medical cause of her injury prevent her from identifying the party likely responsible for her injury").

Once a plaintiff is aware of the injury done, she is under an obligation to undertake an inquiry into the cause of that injury. *Sexton v. United States,* 832 F.2d 629, 637 (D.C.Cir.1987) (a plaintiff is required to exercise reasonable diligence in discovering the cause of a known injury); *see also In re Swine Flu Immunization Prod. Liab. Litig.,* 880 F.2d 1439, 1443 (D.C.Cir.1989) (injury due to vaccination). In *In re Swine Flu,* the plaintiff began to experience debilitating symptoms related to Guillain Barre Syndrome after she received a vaccination for swine flu influenza. Although she consulted with her physicians about the reasons for her illness, she was told that the cause was unknown.

The court found that because plaintiff lacked actual and constructive knowledge of the cause of her injury, her awareness of the injury did not start the statute of limitations running. *Id.* at 1441. It further explained that because the plaintiff repeatedly inquired as to the cause of her injury, with no satisfactory answer being given, she undertook a reasonable, diligent inquiry satisfying her duty. *Id.* at 1443.

In *Nemmers v. United States,* 681 F.Supp. 567, 570 (C.D.Ill.1988), *aff'd* 870 F.2d 426 (7th Cir.1989), the parents of a son born with cerebral palsy were told, in response to specific inquiries, that the cause of the injury was not determinable. The Seventh Circuit found that where no physician advised plaintiffs that their son's cerebral palsy was connected to the treatment provided to his mother during her labor and delivery, the parents did not know the cause of their son's injury for statute of limitations purposes. *Id.* at 570–71; *compare Brown v. United States,* 353 F.2d 578, 580 (9th Cir.1965) (where parents were aware that their child's blindness was caused by the administration of oxygen to the child after birth, they were aware of the "exact nature of the disability and its relationship to prior medical treatment").

Plaintiff makes a persuasive argument that she did not receive sufficient information from the physicians who delivered and later treated Clayton that would allow her to determine that the medical treatment provided may have resulted in Clayton's injuries. Plaintiff states that she only learned that the treatment she received at the time of delivery may have been the cause of Clayton's injury's shortly before she filed her complaint. Plaintiff made repeated attempts to gain information from doctors about the cause of Clayton's injuries. Doctors informed her that the cause was "unknown" and no one linked

the hemorrhage in the brain with the labor and delivery process, or with any medical treatment provided. While it is true that Regina knew that the hemorrhage caused the injury, she was not armed with facts, despite attempts to gain such information, of the medical cause of that hemorrhage. Regina made sufficient inquiry of the doctors at Walter Reed to satisfy her duty to undertake reasonable efforts to discover the cause of a known injury. As the Ninth Circuit explained in *Winter v. United States,* 244 F.3d 1088 (9th Cir.2001), a plaintiff, who is a layman without medical knowledge, cannot be expected to know the cause of his or her injuries, despite the uncertainty of his or her own treating doctors. 244 F.3d at 1091.

Accordingly, the previous decision of this court dismissing Clayton's claims on statute of limitations grounds in vacated.

### III.

For the reasons discussed above, Plaintiff's motion for reconsideration is GRANTED.