**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| LUZ HELLMAN, | No. 08-15059 |
| Plaintiff - Appellant, | DC No. CV 06-1465 FJM |
| v. | |
| SHELDON WEISBERG; STATE OF ARIZONA, | MEMORANDUM [*] |
| Defendants - Appellees. | |

Appeal from the United States District Court
for the District of Arizona
Frederick J. Martone, District Judge, Presiding

Argued and Submitted December 8, 2009
San Francisco, California

Before:     TASHIMA, GRABER, and BYBEE, Circuit Judges.

Plaintiff Luz Hellman, a former judicial assistant at the Arizona Court of

Appeals, appeals the district court's order granting summary judgment to

defendants Sheldon Weisberg, former Chief Judge of the Arizona Court of

Appeals, and the State of Arizona.  Hellman claims that she was retaliated against

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

for participating in the investigation of a discrimination claim made by a former law clerk at the Arizona Court of Appeals. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

As a preliminary matter, we hold that Hellman's notice of appeal was timely. The district court clerk's office was closed on the day her notice of appeal was originally due. Thus, the office was "inaccessible" within the meaning of Federal Rule of Appellate Procedure 26(a)(3). *See Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 747 (9th Cir. 2001). The availability of electronic filing does not change this result. The inaccessibility clause, as it existed when Hellman's notice of appeal was filed, was added to Rule 26 in 1989, long before the advent of electronic filing. *See* Fed. R. App. P. 26, cmt. (1989). The clause was therefore not intended to distinguish between filings in electronic and physical form. Congress has acknowledged as much, recently updating the rule to address more clearly the existence of electronic filing. *See* Fed. R. App. P. 26, cmt. (Dec. 1, 2009). Accordingly, Hellman's notice of appeal, filed January 2, 2008, was timely, and we may exercise jurisdiction over this case.

We review *de novo* a district court's order granting summary judgment. *Universal Health Servs. Inc. v. Thompson*, 363 F.3d 1013, 1019 (9th Cir. 2004). We must determine, viewing the evidence in the light most favorable to Hellman,

whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *See Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004).

To establish her claim of retaliation under Title VII, Hellman was required to prove that "(1) [she] engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between the protected activity and the adverse employment action." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1093-94 (9th Cir. 2008). We need not decide whether Hellman engaged in protected activity in this case, because we agree with the district court that Hellman did not establish that she suffered an adverse employment action.

Under *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006), an action constitutes an adverse employment action only if it is "materially adverse," meaning that it would "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (internal quotation marks omitted). As the Court has often stated, Title VII "does not set forth a general civility code for the American workplace." *Id.* (internal quotation marks omitted). Thus, not every disagreeable workplace action constitutes retaliation; rather, retaliation must produce "an injury or harm." *Id.* at 67. None of the actions Hellman identifies rises to this level of severity.

Hellman's major complaint concerns the snubbing she received from fellow coworkers. This court has previously held that ostracism by coworkers does not constitute an adverse employment action, at least where it does not have an effect on the employee's ability to perform her job. *Brooks v. City of San Mateo*, 229 F.3d 917, 929 (9th Cir. 2000) ("[O]stracism suffered at the hands of coworkers cannot constitute an adverse employment action."); *Manatt v. Bank of Am., NA*, 339 F.3d 792, 803 (9th Cir. 2003); *cf. Davis*, 520 F.3d at 1090 (holding that ostracism constituted an adverse employment action where employee's ban from "an important area of the workplace" contributed to a material change in the terms and conditions of her employment). The ostracism Hellman suffered was mostly social in nature; aside from the effects of the snubbing on her enjoyment of her work environment, there is no evidence that the snubbing went so far as to interfere with her job responsibilities. Accordingly, any ostracism Hellman experienced did not rise to the level of an adverse employment action. *See Burlington*, 548 U.S. at 68 (citing with approval assertion that "snubbing by supervisors and co-workers [is] not actionable under § 704(a)" (internal quotation marks omitted)).

Similarly, the fact that Hellman was informed that Judge Weisberg wanted to fire her and have her criminally prosecuted is insufficient to support her Title VII claims. It is undisputed that Hellman was never fired or prosecuted, and the

-4-

mere threat of termination does not constitute an adverse employment action. *See Hardage v. CBS Broad. Inc.*, 427 F.3d 1177, 1189 (9th Cir. 2005), *amended by* 433 F.3d 672 (2006), *and* 436 F.3d 1050 (2006) (finding that "snide remarks" about harassment claim and thinly veiled threats were not enough to constitute retaliation).

Finally, the reprimand Hellman received from her boss, Judge Kessler, also did not constitute an adverse employment action. The one-time verbal reprimand had no effect on her job duties and was not placed in her personnel file. Especially given Judge Kessler's otherwise supportive attitude, his reprimand did not rise to the level of adverse employment action.

Hellman's First Amendment claim against the State of Arizona fails for similar reasons. To establish her First Amendment claim, Hellman was required to show that: "1) [she] engaged in constitutionally protected speech; 2) [her] employer took 'adverse employment action' against [her]; and 3) [her] speech was a 'substantial or motivating' factor for the adverse action." *Marable v. Nitchman*, 511 F.3d 924, 929 (9th Cir. 2007).

As above, we conclude that Hellman did not suffer an "adverse employment action" sufficient to support her claim that her First Amendment rights were violated. To begin with, the test of adverse employment action in the First

Amendment context is substantially similar to the test under Title VII. *See Coszalter v. City of Salem*, 320 F.3d 968, 975-76 (9th Cir. 2003) (holding that the allegedly retaliatory action must "deter the exercise of First Amendment rights"). Further, the purportedly retaliatory actions Hellman experienced – social ostracism, threat of termination, and a reprimand from Judge Kessler – are similar to those that we deemed insufficient to support a First Amendment retaliation claim in *Nunez v. City of Los Angeles*, 147 F.3d 867 (9th Cir. 1998). *See Coszalter*, 320 F.3d at 976 ("The essential holding of *Nunez* is simply that when an employer's response includes only minor acts, such as 'bad-mouthing,' that cannot reasonably be expected to deter protected speech, such acts do not violate an employee's First Amendment rights.").

The district court did not err in granting summary judgment to defendants. The judgment of the district court is therefore **AFFIRMED**.