146 T.C. No. 15

UNITED STATES TAX COURT

FELIX GURALNIK, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4358-15L.                    Filed June 2, 2016.

R mailed P a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330. On February 13, 2015, P sent his petition to this Court via Federal Express First Overnight service, which was not then a "designated delivery service" under I.R.C. sec. 7502(f)(2). P's petition was required to be filed "within 30 days of a determination under this section." I.R.C. sec. 6330(d)(1).

On the last date for timely filing of the petition, Tuesday, February 17, 2015, all Federal Government offices in the District of Columbia, including the Tax Court, were officially closed on account of Winter Storm Octavia. For that reason, P's petition could not be delivered to the Court on that day. P's petition was delivered to the Court and filed on Wednesday, February 18, 2015, when the Court reopened for business.

Fed. R. Civ. P. 6(a)(3)(A) provides that, "if the clerk's office is inaccessible * * * on the last day for filing * * *, then the time for filing is extended to the first accessible day that is not a Saturday,

Sunday, or legal holiday." Tax Court Rule 25(a), dealing with computation of time, does not address how time shall be computed when the Clerk's Office is inaccessible. Tax Court Rule 1(b), however, provides: "Where in any instance there is no applicable rule of procedure, the Court or the Judge before whom the matter is pending may prescribe the procedure, giving particular weight to the Federal Rules of Civil Procedure to the extent that they are suitably adaptable to govern the matter at hand."

1. Held: The 30-day filing period prescribed by I.R.C. sec. 6330(d)(1) is jurisdictional and "equitable tolling" does not apply.

2. Held, further, P may not avail himself of the "timely mailed, timely filed" rule of I.R.C. sec. 7502(f) because Federal Express First Overnight service was not "designated by the Secretary" as an approved private delivery service as of the date on which P's petition was filed.

3. Held, further, in the absence of a Tax Court Rule prescribing the procedure when the Clerk's Office is inaccessible, the principles of Fed. R. Civ. P. 6(a)(3) are "suitably adaptable to govern the matter at hand." Because P's petition was filed on February 18, 2015, the first accessible day that was not a Saturday, Sunday, or legal holiday, it was timely filed and the Court has jurisdiction to hear this case.

Eric M. Creizman, for petitioner.[*]

Michael J. De Matos, for respondent.

[*]Memorandum amicus curiae was filed by T. Keith Fogg and Carlton M. Smith as attorneys for the Harvard Federal Tax Clinic.

OPINION

LAUBER, <u>Judge</u>:  This collection due process (CDP) case is before the Court on a motion by the Internal Revenue Service (IRS or respondent) to dismiss for lack of jurisdiction on the ground that the petition was not filed within the 30-day period prescribed by section 6330(d).[1]  On May 28, 2015, the motion was assigned for disposition to Special Trial Judge Armen, who recommended that it be denied.  On August 24, 2015, his Recommended Findings of Fact and Conclusions of Law were served on the parties pursuant to Rules 182(e) and 183(b).

On October 7, 2015, respondent filed a response that concurred with Judge Armen's findings of fact but objected to his conclusions of law.  On November 6, 2015, petitioner filed a response that agreed with Judge Armen's recommendation and advanced additional legal theories to support it.  On November 19, 2015, we granted a motion by the Harvard Federal Tax Clinic to file a memorandum amicus curiae in support of petitioner, to which both parties have responded.

Petitioner and amicus curiae have advanced four distinct theories to sustain our jurisdiction in this case.  We conclude that at least one of these arguments sup-

---

[1]Unless otherwise indicated, all statutory references are to the Internal Revenue Code as in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

ports our jurisdiction. That argument is based on rule 6(a)(3) of the Federal Rules of Civil Procedure (Civil Rules), captioned "Inaccessibility of the Clerk's Office."

Civil Rule 6(a)(3)(A) provides that, "if the clerk's office is inaccessible * * * on the last day for filing * * * , then the time for filing is extended to the first accessible day that is not a Saturday, Sunday, or legal holiday." Rule 25(a) of our Rules, dealing with computation of time, does not address how time shall be computed when the Clerk's Office is inaccessible. Rule 1(b) of our Rules does, however, provide: "Where in any instance there is no applicable rule of procedure, the Court or the Judge before whom the matter is pending may prescribe the procedure, giving particular weight to the Federal Rules of Civil Procedure to the extent that they are suitably adaptable to govern the matter at hand."

The last date for filing the petition in this case was February 17, 2015, a day on which all Federal offices in the District of Columbia, including the Tax Court, were officially closed for business because of Winter Storm Octavia. This Court does not maintain an after-hours "drop box" for filing documents. And the petition could not be filed electronically that day because the Court, at the time, did not permit petitions to be filed electronically. The Court's Clerk's Office was thus "inaccessible" for the entire day.

- 5 -

We conclude that Civil Rule 6(a)(3) is "suitably adaptable to govern the matter at hand." Giving particular weight to the analogous Civil Rule, as our Rule 1(b) prescribes, we conclude that the time for filing the petition should be "extended to the first accessible day that is not a Saturday, Sunday, or legal holiday." Our Clerk's Office first became accessible following Winter Storm Octavia on February 18, 2015, when the Court reopened for business. Because the petition was filed on that day, we conclude that it was timely filed. We will accordingly deny respondent's motion to dismiss for lack of jurisdiction.

## Background

We adopt findings of fact as recommended by Special Trial Judge Armen in his Recommended Findings of Fact and Conclusions of Law. See Rule 183(b), (d). These facts are based on the parties' pleadings, memoranda, and attached exhibits. They are stated solely for the purpose of deciding this motion and not as findings of fact in this case. See Rule 1(b); Fed. R. Civ. P. 52(a); Cook v. Commissioner, 115 T.C. 15, 16 (2000), aff'd, 269 F.3d 854 (7th Cir. 2001).

On January 16, 2015, respondent sent to petitioner, by certified mail to his last known address, a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330. This notice of determination sustained the filing of a notice of Federal tax lien in respect of petitioner's outstanding Federal income

tax liabilities for 2003 and 2005.  Petitioner, then a resident of New York, sought

to challenge this determination by filing a petition with this Court.

The notice of determination advised petitioner:  "If you want to dispute this

determination in court, you must file a petition with the United States Tax Court

within a 30-day period beginning the day after the date of this letter."  See sec.

6330(d)(1).  The 30th day "after the date of this letter," which was also the 30th

day after the mailing of the notice of determination, was Sunday, February 15,

2015.  The following day, Monday, February 16, was Washington's Birthday, a

legal holiday in the District of Columbia.

On February 16, D.C. Mayor Muriel Bowser announced that a "snow emer-

gency" would go into effect in the District of Columbia.[2]  The Executive Office of

the Mayor accordingly issued an announcement declaring that all D.C. Govern-

ment offices would be closed on Tuesday, February 17.[3]  All Federal Government

offices in Washington, D.C., including the Tax Court, were likewise closed for

---

[2]See DC Snow Emergency Goes Into Effect at 7 am on Tuesday, February 17, http://dc.gov/release/dc-snow-emergency-goes-effect-7-am-tuesday-february-17 (last visited May 5, 2016).

[3]See Bowser Administration to Close District Government on Tuesday, February 17, Exec. Office of the Mayor (Feb. 17, 2015), http://dc.gov/release/bowser-administration-close-district-government-tuesday-february-17 (last visited May 5, 2016); http://dc.gov/snow217 (last visited May 5, 2016).

business on that date because of Winter Storm Octavia.[4] The Tax Court reopened for business on Wednesday, February 18.

Petitioner sent his petition to the Court via Federal Express (FedEx) First Overnight service in an envelope showing a "ship date" of February 13, 2015. First Overnight service, which promises delivery first thing the next business-day morning (typically by 8:00 or 8:30 a.m.), is the most expedited and expensive overnight service offered by FedEx. First Overnight service did not exist in 2004 when the IRS published Notice 2004-83, 2004-2 C.B. 1030, designating certain "private delivery services" as meeting the criteria set forth in section 7502(f). Notice 2004-83 designated five FedEx modes of delivery as meeting the section 7502 standards; the most expedited of these was Priority Overnight service, which promised delivery the next business-day morning (typically by 10:30 a.m.). The IRS added FedEx First Overnight service to the list of designated private delivery services effective May 6, 2015, approximately three months after the petition in this case was filed. See Notice 2015-38, 2015-21 I.R.B. 984.

This Court does not maintain an after-hours "drop box" and does not accept papers when the Court is closed. The snow emergency thus prevented the petition

---

[4]See https://www.opm.gov/policy-data-oversight/snow-dismissal-proce dures/status-archives (last visited May 5, 2016); http://www.weather.com/storms/ winter/news/octavia-midatlantic-snow (last visited May 5, 2016).

from being delivered to the Court on February 17. Because the Tax Court at the relevant time did not permit petitions (unlike other papers) to be filed electronically,[5] petitioner could not efile his petition with the Court on February 17. His petition was delivered to the Court on Wednesday, February 18, and was filed by the Court later that day. See Rule 10(d) (specifying the Court's business hours).

## Discussion

Petitioner and amicus curiae have advanced four lines of argument in opposition to respondent's motion to dismiss this case for lack of jurisdiction. We discuss these arguments in turn.

## A. Equitable Tolling

The Tax Court is a court of limited jurisdiction, and we may exercise our jurisdiction only to the extent authorized by Congress. See sec. 7442; Moosally v. Commissioner, 142 T.C. 183, 195-196 (2014). Section 6330(d)(1) provides that an aggrieved taxpayer in a CDP case "may, within 30 days of a determination under this section, appeal such determination to the Tax Court (and the Tax Court shall have jurisdiction with respect to such matter)." We have repeatedly held that

---

[5]The Tax Court has proposed an amendment to its Rules to permit the electronic filing of petitions. See Press Release (Jan. 11, 2016), http://www.-ustaxcourt.gov/press/011116.pdf.

"[t]he 30-day period provided in section 6330(d)(1) for the filing of a petition for review is jurisdictional." Gray v. Commissioner, 138 T.C. 295, 299 (2012).[6]

Petitioner, supported by amicus curiae, challenges this premise, contending that the 30-day filing period specified in section 6330(d) is "a nonjurisdictional statute of limitations." In support of this proposition, they cite a line of Supreme Court cases outside the tax arena holding that, in suits against the United States, filing periods in the nature of claim-processing rules are not necessarily jurisdictional and are subject to a "rebuttable presumption of equitable tolling." Irwin v. VA, 498 U.S. 89, 95-96 (1990); see, e.g., Kontrick v. Ryan, 540 U.S. 443, 454-455 (2004) (finding nonjurisdictional a bankruptcy claim-processing rule). Petitioner and amicus curiae contend that tolling of the 30-day filing deadline is appropriate here because petitioner "acted with diligence in pursuing timely filing but * * * was thwarted by circumstances beyond * * * [his] control--i.e., a snowstorm that caused the closure of * * * [the] Clerk's Office."

We are not persuaded to depart from our well-settled precedents holding that the 30-day period prescribed by section 6330(d)(1) for filing a petition in a

---

[6]Accord, e.g., Craig v. Commissioner, 119 T.C. 252, 256 (2002); Sarrell v. Commissioner, 117 T.C. 122, 125 (2001); Moorhous v. Commissioner, 116 T.C. 263, 269 (2001); Meyer v. Commissioner, 115 T.C. 417, 421 (2000); McCune v. Commissioner, 115 T.C. 114, 117-118 (2000); Offiler v. Commissioner, 114 T.C. 492, 498 (2000).

CDP case, like the 90-day period prescribed by section 6213(a) for filing a petition in a deficiency case, sets forth a jurisdictional requirement. Most of the cases on which petitioner and amicus curiae rely involve deadlines to bring suit in Article III courts. See Sebelius v. Auburn Reg'l Med. Ctr., 568 U.S. __, __, 133 S. Ct. 817, 827 (2013); id. at __, 133 S. Ct. at 829 (Sotomayor, J., concurring). None of those cases involves construction of the Internal Revenue Code, and none involves a filing period governing access to the Tax Court. The Supreme Court's rulings in the tax context indicate that filing periods of the sort involved here are jurisdictional. See United States v. Brockamp, 519 U.S. 347, 349-354 (1997) (citing need for efficient tax administration in holding that equitable tolling does not apply to three-year period prescribed by section 6511 for filing an administrative claim for refund); United States v. Dahm, 494 U.S. 596, 601-602 (1990). A court may not apply equitable tolling to a jurisdictional filing requirement. Auburn Reg'l Med. Ctr., 133 S. Ct. at 824; Pollock v. Commissioner, 132 T.C. 21, 29 (2009) ("If a deadline is jurisdictional, a court may not use equitable tolling to extend it * * * even if the result is harsh.").

Courts use traditional tools of statutory construction in evaluating whether Congress has imbued a filing requirement with jurisdictional consequences. See United States v. Wong, 575 U.S. __, __, 135 S. Ct. 1625, 1632 (2015). The cen-

tral question is whether the statute at issue "speak[s] in jurisdictional terms or refer[s] in any way to the jurisdiction of the * * * court[.]" Id. at __, 135 S. Ct. at 1633 (quoting Arbaugh v. Y&H Corp., 546 U.S. 500, 515 (2006)); see also V.L. v. E.L., 577 U.S. __, __, 136 S. Ct. 1017, 1021 (2016) (holding that Georgia adoption statute was not jurisdictional because it did "not speak in jurisdictional terms"); Musacchio v. United States, 577 U.S. __, __, 136 S. Ct. 709, 712 (2016) (holding that time period for bringing Federal criminal prosecution gave rise to a statute of limitations defense, and was not jurisdictional, because the statute did not "speak in jurisdictional terms").

In most of the cases amicus curiae cites, the claims-filing period was specified in a statutory provision separate from that which conferred jurisdiction on the reviewing court. The Supreme Court relied on this fact in concluding that equitable tolling applied. See, e.g., Wong, 135 S. Ct. at 1633 ("Congress's separation of a filing deadline from a jurisdictional grant indicates that the time bar is not jurisdictional."); Henderson v. Shinseki, 562 U.S. 428, 436-441 (2011) (holding filing deadline nonjurisdictional where jurisdiction was conferred by separate statutory provision). Compare Lippolis v. Commissioner, 143 T.C. 393, 397 (2014) (holding amount-in-controversy requirement of section 7623(b)(5) nonjurisdictional where jurisdiction was conferred by separate statutory provision), with A.I.M.

Controls v. Commissioner, 672 F.3d 390, 394-395 (5th Cir. 2012) (distinguishing Shinseki and holding that 60-day period prescribed by section 6226(b)(1) for commencing TEFRA action is jurisdictional).

Here, the filing period and the grant of jurisdiction are set forth in the same sentence of the statute and are explicitly linked. Section 6330(d)(1) provides that a taxpayer "may, within 30 days of a determination under this section, appeal such determination to the Tax Court (and the Tax Court shall have jurisdiction with respect to such matter)." The plain meaning of these words is that the Tax Court "shall have jurisdiction" if and only if the condition precedent stated in the first half of the sentence is satisfied--that is, if the taxpayer has filed an appeal to our Court "within 30 days of a determination under this section." Section 6330(d)(1) is the statute that grants this Court subject-matter jurisdiction over CDP appeals. It indisputably "speak[s] in jurisdictional terms." See Wong, 135 S. Ct. at 1633.

In holding that the 30-day filing period prescribed by section 6330(d)(1) is jurisdictional, we have relied on our precedents holding that the 90-day period prescribed by section 6213(a) sets forth a jurisdictional deadline. See, e.g., McCune, 115 T.C. at 117-118 ("The statutory periods are jurisdictional and cannot be extended."); Joannou v Commissioner, 33 T.C. 868, 869 (1960) ("[T]he 90-day period [has been] fixed by Congress as the period within which the petition must be

filed in order to give the Tax Court jurisdiction."). While suggesting that adoption of its theory "would not necessarily cause a similar ruling that the 90-day period is not jurisdictional," amicus curiae appears to recognize that this would be the logical extension of its argument.

In cases too numerous to mention, dating back to 1924, we have held that the statutorily-prescribed filing period in deficiency cases is jurisdictional. See, e.g., Satovsky v. Commissioner, 1 B.T.A. 22, 24 (1924); Block v. Commissioner, 2 T.C. 761, 762 (1943). Even if the "equitable tolling" argument advanced by petitioner and amicus curiae were otherwise persuasive, which it is not, we would decline to adopt that argument solely on grounds of stare decisis. Cf. John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 138-139 (2008) (citing stare decisis in holding that six-year period prescribed by 28 U.S.C. sec. 2501 for filing Tucker Act claim is jurisdictional). We thus reaffirm our rulings that the 30-day filing period prescribed by section 6330(d)(1) is jurisdictional and accordingly hold that equitable tolling does not apply.[7]

---

[7]Every Court of Appeals to consider the question agrees with this conclusion. See, e.g., Gray v. Commissioner, 723 F.3d 790, 793 (7th Cir. 2013), aff'g 138 T.C. 295, 299 (2012); Boyd v. Commissioner, 451 F.3d 8 (1st Cir. 2006), aff'g 124 T.C. 296, 303 (2005); see also Kaplan v. Commissioner, 552 F. App'x 77, 78 (2d Cir. 2014); Trivedi v. Commissioner, 525 F. App'x 587, 588 (9th Cir. 2013); Springer v. Commissioner, 416 F. App'x 681, 683 n.1 (10th Cir. 2011).

B.    Section 7502

Although the petition was not filed with this Court until February 18, 2015, it was mailed on February 13, two days before the unextended due date.  Section 7502 contains a "timely mailed, timely filed" rule.  Assuming arguendo that the 30-day filing deadline is jurisdictional, petitioner contends that his petition was timely filed because it was timely mailed.

Section 7502(a)(1) provides that, if a taxpayer sends his petition for delivery to the Court "by United States mail" within the prescribed period for filing the petition, and the Court receives the petition after that period has ended, the date of the U.S. Postal Service postmark on the envelope containing the petition will be considered the date of delivery.  Section 7502(f)(2) extends this "timely mailed, timely filed" rule to certain private delivery services "if such service is designated by the Secretary for purposes of this section."

The Secretary may so designate a private delivery service only if he determines that it is at least as timely and reliable as the U.S. mail and that it meets other criteria specified in the statute.  See sec. 7502(f)(2)(A)-(D); sec. 301.7502-1(c)(3), Proced. & Admin. Regs. (stating that the "timely mailed, timely filed" rule applies to a private delivery service "if the Commissioner determines that the service satisfies the conditions of section 7502(f)(2)").  In 1997 the Commissioner set

forth the criteria that he would employ in making such determinations. See Rev.

Proc. 97-19, 1997-1 C.B. 644.[8] "Delivery services that wish to be designated in

time for an upcoming filing season must * * * submit applications by June 30th of

the year preceding that filing season." Notice 2004-83, 2004-2 C.B. 1030 (citing

Rev. Proc. 97-19, 1997-1 C.B. at 646).

The statute does not specify how the Secretary shall inform the public of

such designations. The regulations provide that "the Commissioner may, in guid-

ance published in the Internal Revenue Bulletin * * * prescribe procedures and

additional rules to designate" approved private delivery services. Sec. 301.7502-

1(c)(3), Proced. & Admin. Regs. In practice, the Commissioner has generally pub-

lished this guidance by means of notices.

In Notice 97-26, 1997-1 C.B. 413, the Commissioner set forth the initial list

of companies and classes of delivery service that were designated for purposes of

section 7502. As relevant here, the Commissioner updated that list in Notice

2004-83, supra, which was effective January 1, 2005. That Notice listed all pri-

vate delivery services that the Secretary had designated, as of the date petitioner

filed his petition, as meeting section 7502(f) standards. The FedEx services in-

_____

[8]Rev. Proc. 97-19, 1997-1 C.B. 644, has been partially modified by Notice 97-50, 1997-2 C.B. 305; Notice 99-41, 1999-2 C.B. 325; Notice 2001-62, 2001-2 C.B. 307; and Notice 2015-38, supra.

cluded on this list are as follows: FedEx Priority Overnight, FedEx Standard Overnight, FedEx 2 Day, FedEx International Priority, and FedEx International First. Notice 2004-83, 2004-2 C.B. at 1030, explicitly states that "FedEx * * * [is] not designated with respect to any type of delivery service not identified above."

Petitioner sent his petition via FedEx First Overnight service. Because First Overnight service did not exist in 2004, and because the IRS did not publish an updated list of designated private delivery services during the ensuing 10-year period, First Overnight service was not "designated by the Secretary" at the time petitioner filed his petition. See sec. 7502(f)(2). We have previously held that the "timely mailed, timely filed" rule does not apply when a taxpayer mails his petition using a non-designated private delivery service. See Eichelburg v. Commissioner, T.C. Memo. 2013-269, at *7 (holding that "timely mailed, timely filed" rule does not apply to FedEx "Express Saver" service because that service was not a designated private delivery service under Notice 2004-83, supra).[9]

---

[9]Accord Scaggs v. Commissioner, T.C. Memo. 2012-258, at *5 (holding that "timely mailed, timely filed" rule does not apply to FedEx "Express Saver Third business day" service because that service was not a designated private delivery service under Notice 2004-83, supra); Raczkowski v. Commissioner, T.C. Memo. 2007-72, 93 T.C.M. (CCH) 1045 (holding the same with respect to "UPS Ground" service); see also Herzog v. Commissioner, __ F. App'x __, 2016 WL 758751, at *2 (11th Cir. Feb. 26, 2016) (holding the same with respect to FedEx "Express Saver" service).

Petitioner contends that these cases are distinguishable because the services there in question were inferior to the premium service listed in Notice 2004-83 for the relevant carrier. First Overnight service, by contrast, is more expedited and more expensive than all five FedEx services that the Secretary in Notice 2004-83 found to be acceptable. Under these circumstances, petitioner urges that we deem the Secretary to have designated First Overnight service as meeting the statutory standards even though it is not listed in that Notice.

Although petitioner's argument has some common-sense appeal, we are unable to accept it. Our prior opinions held the "timely mailed, timely filed" rule unavailable, not because the private delivery service the taxpayer used was somehow inferior, but because that service had not been "designated by the Secretary." Sec. 7502(f). The fact that a new service is more expedited than a previously-designated service, while perhaps important to the customer, is not dispositive for the Secretary. For example, the Commissioner requires, as a condition of designation under section 7205(f)(2), that "[t]he delivery service offered must provide for delivery to all street addresses within the United States to which documents and payments subject to § 7502 must be sent." Rev. Proc. 97-19, sec. 4.04, 1997-1 C.B. at 645. No matter how fast and expensive a new service is, the Secretary may

decline to designate it under section 7502(f) if it does not satisfy this (and other specified) requirements.

Section 7502(f) provides that a private delivery service must be "designated by the Secretary" and that "[t]he Secretary may designate a delivery service * * * only if the Secretary determines" that it meets specified standards. At the time the petition was filed, the Secretary had not made, with respect to FedEx First Overnight service, the determination that the statute delegates to him. The statute does not authorize this Court to make that determination in the Secretary's stead or to deem him to have made a designation that he did not make.[10]

As it happened, the Commissioner added FedEx First Overnight service to the list of designated private delivery services effective May 6, 2015. See Notice 2015-38, supra. That Notice was issued approximately three months after the petition in this case was filed. Petitioner urges that we give Notice 2015-38 retroactive effect and treat the petition as "timely mailed" accordingly.

Section 7805(b)(8) provides that "[t]he Secretary may prescribe the extent, if any, to which any ruling (including * * * any administrative determination other

---

[10]See also Herzog v. Commissioner, 2016 WL 758751, at *2 (rejecting contention that "timely mailed, timely filed" rule should apply where private delivery service, though not formally designated by the Secretary, "satisfies several of the criteria required" of designated private delivery services).

than by regulation) relating to the internal revenue laws shall be applied without retroactive effect." Notice 2004-83, 2004-2 C.B. at 1030, stated that FedEx was "not designated with respect to any type of delivery service not identified" therein. Notice 2015-38, 2015-21 I.R.B. at 984, states that the designation of FedEx First Overnight service as an acceptable private delivery service was to be "effective May 6, 2015." We conclude that this statement constitutes a determination by the Secretary that the designation set forth in Notice 2015-38 "shall be applied without retroactive effect." Sec. 7805(b)(8). Because FedEx First Overnight service was not "designated by the Secretary" as of February 13, 2015, the date on which the petition was mailed, petitioner cannot avail himself of the "timely mailed, timely filed" rule to sustain our jurisdiction in this case.

C.     Section 7503

The 30-day filing period prescribed by section 6330(d)(1) is extended if the 30th day falls on certain days other than a workday. Section 7503 provides: "When the last day prescribed under authority of the internal revenue laws for performing any act falls on Saturday, Sunday, or a legal holiday, the performance of such act shall be considered timely if it is performed on the next succeeding day which is not a Saturday, Sunday, or a legal holiday." For this purpose, "the term 'legal holiday' means a legal holiday in the District of Columbia." Ibid. In the

case of an act to be performed outside the District of Columbia, "the term 'legal holiday' also means a Statewide legal holiday" in the State where the relevant IRS office is located. Ibid.

The IRS mailed the notice of determination to petitioner on January 16, 2015. The 30th day thereafter was Sunday, February 15. The following day, Monday, February 16, was Washington's Birthday, a legal holiday in the District of Columbia. See Rule 25(a)(2), (b); D.C. Code sec. 28-2701 (2013). On February 17, all D.C. and Federal Government offices, including the Tax Court, were officially closed because of a "snow emergency" attributable to Winter Storm Octavia. Petitioner contends that his petition was timely filed because February 17 was, in practical effect, a legal holiday in the District of Columbia.

The regulations provide that, "[f]or the purpose of section 7503, the term legal holiday includes the legal holidays in the District of Columbia as found in D.C. Code. Ann. 28-2701." Sec. 301.7503-1(b), Proced. & Admin. Regs. The legal holidays found in D.C. Code section 28-2701 include the familiar Federal holidays. The list also includes District of Columbia Emancipation Day (April 16); "every Saturday, after twelve o'clock noon"; and "any day appointed by the President of the United States as a day of public feasting or thanksgiving." Id.

The use of the verb "includes" in section 301.7503-1(b), Proced. & Admin. Regs., indicates that the foregoing list is not exhaustive.  See Christopher v. SmithKline Beecham Corp., 567 U.S. __, __, 132 S. Ct. 2156, 2170 (2012) ("[T]he definition is introduced with the verb 'includes' instead of 'means.'  This word choice is significant because it makes clear that the examples enumerated in the text are intended to be illustrative, not exhaustive."); United States v. Philip Morris USA Inc., 566 F.3d 1095, 1111 (D.C. Cir. 2009); Dunaway v. Commissioner, 124 T.C. 80, 91 (2005).  Thus, there may be legal holidays in the District of Columbia other than those currently enumerated in the D.C. Code.

Respondent correctly notes that a court cannot declare a "legal holiday" and that, "[i]n order to attain 'legal holiday' status, there must be legislative or executive enactment."  See Garcia-Velázquez v. Frito Lay Snacks Caribbean, 358 F.3d 6, 9 (1st Cir. 2004); In re Cascade Oil Co., 848 F.2d 1062, 1064 (10th Cir. 1988). In the absence of any relevant legislative enactment, petitioner relies on the declaration by the Mayor of the District of Columbia that local government offices would be closed on February 17, 2015, because of a "snow emergency."

"Upon reasonable apprehension of the existence of a public emergency and the determination by the Mayor that the issuance of an order is necessary for the immediate preservation of the public peace, health, safety, or welfare, * * * the

Mayor may issue an emergency executive order." D.C. Code sec. 7-2304 (2012). Mayor Bowser exercised this authority by declaring a snow emergency on February 17, 2015, on account of Winter Storm Octavia. Pursuant to that state of emergency, all D.C. Government offices were closed and all D.C. Government employees received paid leave.[11]

Although "snow emergency days" and "legal holidays" are generally treated similarly for purposes of local government operations, the D.C. Code and Municipal Regulations explicitly distinguish between them. The Mayor is authorized to declare a "legal holiday," but that authorization appears in a different section of the D.C. Code from that which authorizes her to declare a state of emergency. See D.C. Code sec. 1-612.02(b) (2014) (specifying rules with respect to enumerated legal holidays "and any other day designated to be a legal holiday by the Mayor"). And when the terms "snow emergency" and "holiday" appear together, they are invariably used in the disjunctive. See, e.g., D.C. Mun. Regs. tit. 31, sec. 102.3 (2016) (stating that certain agencies "shall not meet on holidays * * * or on snow

---

[11]See D.C. Mun. Regs. tit. 6-B, sec. 1273.4 (2016) (providing that employees are to be on administrative leave during a state of emergency); id. sec. 1299.1 (defining "administrative leave" as an excused absence from duty without loss of pay and without charge to annual leave, sick leave, or compensatory time).

emergency days as declared by the Mayor"). This implies that "snow emergency days" are distinct from "legal holidays" under District of Columbia law.

Petitioner urges that we give these provisions a practical rather than a technical construction. He suggests that a snow emergency day is reasonably regarded as a "holiday" because it is "a day on which one is exempt from work." See MerriamWebster's Collegiate Dictionary 552 (10th ed. 1997). And our jurisdiction would arguably be clear if the Mayor had used different verbiage in her executive order and declared February 17, 2015, to be "a legal holiday on account of the snow emergency." Cf. Anselmo v. James, 449 F. Supp. 922, 924 (D. Mass. 1978) (Governor of Massachusetts issued a "state of emergency executive order" declaring legal holidays in certain counties on account of the Great Blizzard of 1978).

Respondent advances practical considerations of a different sort. If a "snow emergency day" in the District of Columbia were treated as a "legal holiday," it would extend the time, not only for filing documents in the Tax Court, but also "for performing any act" required to be performed anywhere in the country under the internal revenue laws. Sec. 7503. Thus, if the last date for filing a document or performing an act at an IRS office in Missouri happened to be a "snow emergency day" in the District of Columbia, the time for filing that document or performing that act would be extended until the next day that was not a "snow emer-

gency day" in the District of Columbia.  Because it may be difficult for taxpayers and IRS officials around the country to ascertain when "snow emergencies" in the District of Columbia begin and end, respondent expresses concern that such a ruling would "open the door to potential administrative disputes and litigation as to whether local weather events * * * constitute 'holidays' under the Internal Revenue Code."

The parties have advanced reasonable arguments on both sides of this question.  We find that we need not resolve it.  As explained below, we conclude that the petition in this case was timely filed because this Court's Clerk's Office was "inaccessible" on the date the petition was due.

D.    Inaccessibility of the Clerk's Office

This Court's Rules do not address how time should be computed when our Clerk's Office is inaccessible because of government closures, inclement weather, or other reasons.  Civil Rule 6(a), captioned "Computing and Extending Time," does address this subject.  Civil Rule 6(a) enunciates principles for computing the time periods set forth in those rules or "in any statute that does not specify a method of computing time."  Civil Rule 6(a)(1) provides that, when a period is stated in days, the day of the event triggering the period shall be excluded; every inter-

mediate day, including Saturdays, Sundays, and legal holidays, shall be included; and the last day shall be included unless it is a Saturday, Sunday, or legal holiday.

Civil Rule 6(a)(3), captioned "Inaccessibility of the Clerk's Office," sets forth principles for computing time when a District Court clerk's office is unexpectedly closed. It provides that, unless the court orders otherwise, "if the clerk's office is inaccessible * * * on the last day for filing under Rule 6(a)(1), then the time for filing is extended to the first accessible day that is not a Saturday, Sunday, or legal holiday." Fed. R. Civ. P. 6(a)(3)(A). This provision was added in a 1985 amendment to "acknowledge that weather conditions or other events may render the clerk's office inaccessible one or more days." Fed. R. Civ. P. 6(a) advisory committee note to 1985 amendment.

The U.S. Court of Federal Claims has adopted, largely verbatim, this "inaccessibility of the clerk" provision. See Fed. Cl. R. 6(a)(3)(A) (as amended through Aug. 3, 2015). Rule 26(a)(3)(A) of the Federal Rules of Appellate Procedure, likewise captioned "Inaccessibility of the Clerk's Office," incorporates the same principle for computing time periods. Substantially identical provisions are included in rule 45 of the Federal Rules of Criminal Procedure and rule 9006 of the Federal Rules of Bankruptcy Procedure.

It is well established, and respondent agrees, that these procedural rules for computing time are fully applicable where the time period in question embodies a jurisdictional requirement. See United Mine Workers v. Dole, 870 F.2d 662, 665 (D.C. Cir. 1988) ("[T]ime periods, including jurisdictional time periods, are to be construed in accordance with Fed. R. App. P. 26(a), excluding final weekend days and holidays unless a specific statutory provision requires otherwise."). Rather than expanding a court's jurisdiction, Civil Rule 6 simply "supplies the tools for counting days to determine the precise due date." Fed. R. Civ. P. 6, Practice Commentary. Such rules of procedure "do nothing more than provide the court and the parties with a means of determining the beginning and end of a statute of limitations prescribed elsewhere in the law." Bartlik v. DOL, 62 F.3d 163, 166 (6th Cir. 1995).[12]

For example, in In re Swine Flu Immunization Prod. Liab. Litig., 880 F.2d 1439 (D.C. Cir. 1989), the Court of Appeals was required to determine the last day

---

[12]Accord, e.g., Keyser v. Sacramento City Unified Sch. Dist., 265 F.3d 741, 747 (9th Cir. 2001) (holding that notice of appeal, which was subject to mandatory jurisdictional filing period, was timely filed because clerk's office was "inaccessible" on the day after Thanksgiving, when court was officially closed); see also Chao Lin v. U.S. Atty. Gen., 677 F.3d 1043, 1045 (11th Cir. 2012) (stating that Court of Appeals would lack jurisdiction over petition to review immigration proceeding, which was subject to a mandatory jurisdictional filing period, "unless the Clerk's office was 'inaccessible' on the day the * * * petition was due").

to file an administrative claim under the Federal Tort Claims Act, which made timely filing a jurisdictional requirement. Employing Civil Rule 6(a) "as a guide to interpreting the 'jurisdictional' statute establishing the time for filing with the agency," the court excluded both the final Sunday and the following day when government offices were closed on account of a snowstorm. Id. at 1445. The court explained:

> If anything, the case for exclusion of snow days is stronger than that for Sundays; since the latter are known in advance, a plaintiff could always accommodate a contrary rule by filing on the previous Friday. That is not possible with respect to snow days, and, given the rule that Sundays are not counted, we find it inconceivable that Congress would have wished to bar plaintiffs who fail to anticipate on Friday that the Government will decide to close a filing office the following Monday due to a snowstorm. [Ibid.]

The Clerk's Office of this Court was indisputably "inaccessible" on Tuesday, February 17, 2015. The Tax Court was officially closed that entire day because of Winter Storm Octavia. And petitions could not be efiled that day because the Court at the time did not permit petitions to be filed electronically.[13] Thus, if

---

[13]Several courts have held that a clerk's office is "accessible," even though the court is closed, if the document in question can be filed electronically. See Domazet v. Willoughby Supply Co., No. 1:14-CV-1455, 2015 WL 4205279, at *3 (N.D.N.Y. July 10, 2015) (declining to find clerk's office "inaccessible" given the availability of electronic filing); In re Wholesale Grocery Prods. Antitrust Litig., No. 09-MD-2090 ADM/AJB, 2011 WL 586413, at *1 (D. Minn. Feb. 8, 2011) (same); McDow v. Runkle (In re Runkle), 333 B.R. 734, 739 n.3 (Bankr. D. Md.

(continued...)

the computational principle set forth in Civil Rule 6(a)(3)(A) applied here, the petition in this case would be timely under the authorities discussed above. That is so even though the 30-day filing period specified in section 6330(d)(1) is jurisdictional.

Tax Court Rule 25(a), dealing with computation of time, was modeled on Civil Rule 6(a). See Rule 25(a) note, 60 T.C. 1080. But Rule 25(a), while resembling Civil Rule 6(a) in several respects, does not address how time shall be computed when the Clerk's Office is inaccessible. This is unsurprising: When we adopted Rule 25(a) in 1973, Civil Rule 6(a) did not address inaccessibility of the Clerk's Office either. It was not amended to address that subject until 1985.

Under these circumstances, petitioner urges that we adopt, under the authority granted by Rule 1(b), the computational principle set forth in Civil Rule 6(a)(3)(A). Rule 1(b) provides: "Where in any instance there is no applicable rule of procedure, the Court or the Judge before whom the matter is pending may pre-

---

[13](...continued)
2005) (same). But see Hellman v. Weisberg, 360 F. App'x 776, 777-778 (9th Cir. 2009) (holding that closure of clerk's office rendered it "inaccessible" notwithstanding the possibility of electronic filing).

scribe the procedure, giving particular weight to the Federal Rules of Civil Procedure to the extent that they are suitably adaptable to govern the matter at hand."[14]

We have employed Rule 1(b) in various contexts to fill gaps in our Rules. We have adopted principles from analogous Civil Rules when addressing discovery questions as to which our Rules were silent or unclear.[15] We have sought guidance from the Civil Rules in determining our authority to grant certain motions,[16] our authority to dismiss certain cases,[17] and our jurisdiction to vacate a

---

[14]Rule 25(c) note, 60 T.C. 1080, states that, while the time for filing briefs and most pleadings can be extended, "[t]he period fixed by statute, within which to file a petition with the Court, cannot be extended by the Court." Adopting the principles of Civil Rule 6(a) would not contradict Rule 25(c) because we would not thereby enlarge the 30-day period prescribed by section 6330(d), but would simply "prescribe the procedure," as authorized by Rule 1(b), for counting days to determine whether that 30-day deadline was met.

[15]See, e.g., Grandbouche v. Commissioner, 99 T.C. 604, 616-617 (1992) (adopting principles of Civil Rule 45 in deciding motion for protective order); Pacific Mgmt. Grp. v. Commissioner, T.C. Memo. 2015-97, at *5-*7 (adopting principles of Civil Rule 45(e)(2) in requiring privilege log for withheld documents); Amazon.com, Inc. & Subs. v. Commissioner, T.C. Memo. 2014-245, at *6-*8 (adopting principles of Civil Rule 45(d) in permitting motion to quash).

[16]See, e.g., Bedrosian v. Commissioner, 144 T.C. 152, 156 (2015) (adopting principles of Civil Rule 60(b) in determining whether to grant untimely motion for reconsideration); Derksen v. Commissioner, 84 T.C. 355, 357 (1985) (looking to caselaw interpreting Civil Rule 15 to interpret similar Rule 41(a)).

[17]See, e.g., Davidson v. Commissioner, 144 T.C. 273, 274-277 (2015) (adopting principles of Civil Rule 41(a) in determining authority to permit voluntary dismissal of innocent spouse case); Settles v. Commissioner, 138 T.C. 372, 374-

(continued...)

final decision on the ground that we lacked jurisdiction over the original proceeding.[18] The Courts of Appeals have interpreted broadly our power under Rule 1(b) to "prescribe the procedure" by adopting principles from the Civil Rules.[19] Indeed, on at least one occasion, we have been reversed when we did not exercise the full scope of this authority. See Appleton v. Commissioner, 430 F. App'x 135, 137 (3d Cir. 2011) (citing Rule 1(b) and stating: "We can discern no reason why permissive intervention pursuant to [Civil] Rule 24(b)(2) should not be available to parties in the Tax Court."), rev'g 135 T.C. 461 (2010); cf. Estate of Proctor v. Commissioner, T.C. Memo. 1994-208, 67 T.C.M. (CCH) 2943, 2944-2945 (ad-

---

[17](...continued)
375 (2012) (adopting principles of Civil Rule 41(a)(2) in determining authority to permit voluntary dismissal of CDP case despite bankruptcy stay); Tipton v. Commissioner, 127 T.C. 214, 217 (2006) (adopting principles of Civil Rule 41(b) in determining authority to dismiss for lack of proper prosecution by intervenor).

[18]See Brannon's of Shawnee, Inc. v. Commissioner, 69 T.C. 999, 1001-1002 (1978) (adopting principles of Civil Rule 60(b)(4) in determining jurisdiction to vacate a decision that had become final under section 7481).

[19]See, e.g., Shepherd v. Commissioner, 147 F.3d 633, 635 (7th Cir. 1998) (stating that Tax Court could properly adopt the principle of Civil Rule 54(b) by entering judgment separately as to some but not all tax years before it); Michaels v. Commissioner, 144 F.3d 495, 497-498 (7th Cir. 1998) (holding that Tax Court correctly adopted the principles of Civil Rule 60(a) in determining that it had jurisdiction to correct clerical errors in a decision after the time for appeal had expired), aff'g T.C. Memo. 1995-294; Brookes v. Commissioner, 163 F.3d 1124, 1128 (9th Cir. 1998).

opting principles of Civil Rule 24(b) in determining permissibility and scope of intervention).

As these cases show, we have regularly used our authority under Rule 1(b) to "prescribe the procedure" by adopting principles from analogous Civil Rules on subjects as to which our Rules are silent.  And we have done so even when the question concerned the scope of our jurisdiction.  Civil Rule 6(a)(3)(A) provides a principle for computing time that is "suitably adaptable to govern the matter at hand."  Rule 1(b).  That principle was adopted 30 years ago to "acknowledge that weather conditions or other events may render the clerk's office inaccessible one or more days"--precisely the situation presented here.  Fed. R. Civ. P. 6(a) advisory committee note to 1985 amendment.  We see no logical reason why litigants in our Court, unlike litigants in virtually every other Federal court, should be penalized for being unable to file a document that we, by closing our Court, have made impossible for them to file on that day.  See id. ("Parties who are obliged to file something with the court during that period [of inaccessibility] should not be penalized if they cannot do so.").

In reply, respondent notes that the principles of Civil Rule 6(a) govern "in computing any time period specified in these rules * * * or in any statute that does not specify a method of computing time."  Respondent contends that the Internal

Revenue Code is a statute that "specif[ies] a method of computing time" because it includes within it sections 7502 and 7503, discussed previously. For this reason, respondent argues that the "inaccessibility of the Clerk" provision of Civil Rule 6(a)(3) is not available for adoption here.

Prior to 2009 Civil Rule 6(a) provided that its principles applied "in computing any time period specified in these rules or in any local rule, court order, or statute." Effective December 1, 2009, the word "statute" was replaced with the phrase "any statute that does not specify a method of computing time." This change was made as part of a package of amendments designed to "establish uniform time-counting rules for all of the Federal Rules areas--including Appellate, Bankruptcy, Civil, Criminal, and Evidence." Fed. R. Civ. P. 6, Practice Commentary. As of then, the computational principles of Civil Rule 6 had been in effect for more than 25 years, and there is no indication that the 2009 change was intended to alter how those principles had been applied. For all that appears, this revision aimed to do no more than state the (arguably self-evident) proposition that a rule of procedure cannot countermand a statutory directive.[20]

---

[20]Before 2009 Civil Rule 6(a)(3) specifically mentioned "weather" as a condition that might render a clerk's office inaccessible. The 2009 amendments eliminated the reference to weather. The advisory committee notes explained: "The reference to 'weather' was deleted from the text to underscore that inacces-

(continued...)

The advisory committee notes to the 2009 amendments supply only one example of a statute that "specifies a method of computing time," namely, 2 U.S.C. sec. 394 (2012). Section 394(a), captioned "method of computing time," specifies principles for computing time periods prescribed by certain statutory provisions relating to contested congressional elections. This statute addresses the subject comprehensively, stating how the first and last days of the prescribed period shall be treated, providing that intermediate Saturdays, Sundays, and legal holidays shall be excluded "[w]hen the period of time * * * is less than seven days," and defining the term "legal holiday" for purposes of that chapter. Ibid.

When confronted with statutes that address computation of time less comprehensively, the courts have held that the principles of Civil Rule 6(a) remain applicable except to the extent the statute in question explicitly supplants them. Thus, if a statute addresses only one element relevant in computing time, Civil Rule 6(a) and its counterparts operate to supplement the statute as to other aspects of time computation. See United States v. Salgado, 250 F.3d 438, 454 (6th Cir. 2001) (holding that 18 U.S.C. sec. 3161, which specifies that certain "periods of delay shall be excluded in computing the time," leaves rule 45 of the Federal

[20](...continued)
sibility can occur for reasons unrelated to weather, such as an outage of the electronic filing system."

Rules of Criminal Procedure operative in other respects); <u>Gordon v. McCain</u>, No. 15-2303, 2015 WL 9703424, at *4 (E.D. La. Dec. 22, 2015) (holding that 28 U.S.C. sec. 2244(d)(1), which specifies how to treat the first day of a one-year filing period, leaves Civil Rule 6(a) operative in other respects); <u>United States v. Liounis</u>, No. 12 CR 350 (ILG), 2013 WL 5596014, at *1 (E.D.N.Y. Oct. 11, 2013) (noting that 18 U.S.C. sec 3161 "is silent as to precisely how the thirty days are to be computed" and holding that Criminal Rule 45(a)(1)(A) "is specifically addressed to that issue").

Neither section 7502 nor section 7503 specifies a comprehensive regime for computing time. Section 7503, captioned "Time for Performance of Acts Where Last Day Falls on Saturday, Sunday, or Legal Holiday," addresses only one aspect of the time computation. It does not address how the first day of a prescribed period shall be treated; it does not address how intermediate Saturdays, Sundays, and legal holidays shall be treated; and it does not address how the last day shall be treated if extraordinary circumstances make it impossible to file the document or perform the act on that day. Section 7502, captioned "Timely Mailing Treated as Timely Filing and Paying," likewise concerns only the last day for filing, providing that in certain circumstances the postmark date "shall be deemed to be the date of delivery." Sec. 7502(a)(1).

Respondent has cited, and our own research has discovered, no judicial opinion holding that a statute like section 7502 or 7503 would operate to render wholly inapplicable the computational principles of Civil Rule 6(a). Rather, we may apply these principles "unless a specific statutory provision requires other- wise." United Mine Workers, 870 F.2d at 665; see Bartlik, 62 F.3d at 167 ("[I]f Congress intends to negate the applicability of * * * Appellate Rule 26(a) it will have to expressly communicate this desire."); see also Fed. R. Civ. P. 6, Practice Commentary (computational principles of Civil Rule 6 "apply to statutory periods unless Congress supplies a different rule" in the form of "a specific provision governing how to calculate timeliness").

We are thus free to apply the principles of Civil Rule 6(a) except to the ex- tent sections 7502 and 7503 explicitly specify a different method for computing time. Neither of those statutes precludes us from adopting, as we have done, com- putational principles specifying how to treat the first day or intermediate weekend days of a filing period. See Rule 25(a)(1) and (2).[21] And neither of those statutes

---

[21]Rule 25(a)(2) affords parties additional time to file documents where the filing period is very short, providing: "[I]f the period prescribed or allowed is less than 7 days, then intermediate Saturdays, Sundays and legal holidays * * * shall be excluded in the computation." Rule 25(a) provided for the same treatment when originally adopted in 1973. See 60 T.C. 1079.

precludes us from adopting, by analogy to Civil Rule 6(a)(3), a rule of procedure specifying how time shall be computed when our Clerk's Office is inaccessible.[22]

In sum, Rule 1(b) authorizes this Court to "prescribe the procedure" in situations such as this where "there is no applicable rule of procedure." In such cases, we are required to "giv[e] particular weight to the Federal Rules of Civil Procedure to the extent that they are suitably adaptable to govern the matter at hand." We conclude that Civil Rule 6(a)(3) is "suitably adaptable" to specify the principle for computing time when our Clerk's Office is inaccessible because of inclement weather, government closings, or other reasons. Civil Rule 6(a)(3) provides that the time for filing is then "extended to the first accessible day that is not a Satur-

---

[22]Respondent contends that we should refrain as a prudential matter from exercising our authority under Rule 1(b) to "prescribe the procedure" by analogy to the Civil Rules. He contends that adoption of an "inaccessibility" principle would be at odds with this Court's prior practice, at least where the computation of jurisdictional filing periods is concerned, and that we should make such a change (if at all) only pursuant to the Court's formal rulemaking authority under Rule 1(a) "after giving appropriate public notice and an opportunity for comment." The express purpose of Rule 1(b), however, is to permit this Court (or a Judge of this Court) to specify what the procedure shall be "[w]here in any instance there is no applicable rule of procedure." By definition, Rule 1(b) authorizes us to prescribe the procedure on a case-by-case basis until such time as we have addressed the subject by formal rulemaking. The Court is currently considering revisions to its Rules and has put out for public comment the revisions proposed to date. See Press Release (Jan. 11, 2016), supra. If the Court proposes any revisions to Rule 25 governing "Computation of Time," those proposals will be put out for public comment at the appropriate time.

day, Sunday, or legal holiday." Because the petition was filed on February 18, 2015, the first accessible day after the Court reopened for business, the petition was timely filed and we have jurisdiction to hear this case.

To reflect the foregoing,

<u>An order will be issued denying respondent's motion to dismiss for lack of jurisdiction</u>.

Reviewed by the Court.

THORNTON, COLVIN, FOLEY, VASQUEZ, GALE, MARVEL, GOEKE, HOLMES, GUSTAFSON, PARIS, MORRISON, KERRIGAN, BUCH, NEGA, PUGH, and ASHFORD, <u>JJ</u>., agree with this opinion of the Court.